# Wytheville.

## J. E. MYERS v. BIBEE GROCERY COMPANY, INC.

### June 16, 1927.

1. APPEAL AND ERROR—*Assignment of Error to Granting or Refusing Instructions—Grounds of Objections—Rule 22 of the Supreme Court of Appeals.*—In the instant case, plaintiff in error assigned as error the giving of an instruction for the plaintiff and the refusing to give an instruction offered by the defendant. Plaintiff in error failed to state the grounds of his objections to the ruling of the court on these instructions as required by Rule 22 of the Supreme Court of Appeals.

    *Held:* That the Supreme Court of Appeals would not consider these assignments of error.

2. BILLS, NOTES AND CHECKS—*Notice of Dishonor—Necessity.*—In order to hold an endorser liable, he must have notice that the note has been dishonored, or reasonable diligence must be used to give him such notice.

3. BILLS, NOTES AND CHECKS—*When Note is Dishonored.*—A negotiable note is dishonored only when it is presented for payment according to its terms and payment is refused.

4. BILLS, NOTES AND CHECKS—*Notice of Dishonor—Letter from Payee to Endorser held Sufficient Notice of Dishonor—Case at Bar.*—In the instant case, it appeared from the evidence that the note upon which the action was based was presented for payment at the bank where it was payable on the day it was due and that payment was refused because the makers had not sufficient funds in the bank with which to pay the note. On the same day, plaintiff, the holder, mailed to defendant, the endorser, a letter stating that the note had been dishonored. It was contended by defendant that this notice was insufficient, but when inspected, the letter met the requirements of section 5658 of the Code of 1919, since the language used was sufficient to "identify the instrument and indicate that it has been dishonored by  *  *  non-payment." While it did not, in terms, say that the note has been presented and payment refused, it did so state by implication. It described the note and told the endorser that the holder would look to him for payment and that the plaintiff was writing him the letter "in lieu of having the note protested." The holder could not look to the endorser for payment

if the note were not unpaid, and could have the note protested only when it had been presented for payment and payment refused.

5. BILLS, NOTES AND CHECKS—*Notice of Dishonor—Sufficiency.*—A notice of dishonor is sufficient if the fact of dishonor appears by reasonable intendment, and will be inferred by any man of business.

6. BILLS, NOTES AND CHECKS—*Notice of Dishonor—Service of Notice by Mail—Case at Bar.*—In the instant case, an action upon a note against an accommodation endorser, the question arose of whether the plaintiff gave the defendant due notice that the note had been dishonored or exercised reasonable diligence to give such notice. Defendant's home was fifteen miles from Motley, the postoffice to which the notice of dishonor was addressed, but he was a frequent visitor in the homes of his son and son-in-law at Motley and the son-in-law was the postmaster. Defendant's son and son-in-law were the makers of the note. All the transactions plaintiff had with the defendant were through Motley postoffice. Plaintiff's letter carried its return address on the envelope. The Federal Statute required the postmaster to deliver to the defendant the letters which were received addressed to him or to return them to the sender. Rev. St. of U. S. 3939; U. S. Comp. St., section 7421. Not one of the letters addressed to the defendant at Motley was ever returned to the plaintiff. Defendant's son-in-law, the postmaster, knew the whereabouts of the defendant when he was not at Motley, and is presumed to have discharged his duty under the law by delivering the letters to the addressee in person or by mail. Defendant denied that he ever received the notice of dishonor.

*Held:* That is was for the jury to decide whether the defendant's testimony, under the circumstances, was sufficient to overcome the presumption that the postmaster, knowing the postoffice address of defendant, delivered the letter to him.

7. BILLS, NOTES AND CHECKS—*Notice of Dishonor—Receipt of Notice— Question for Jury—Case at Bar.*—In the instant case, an action on a note against an accommodation endorser, whether the endorser ever received a letter mailed to him by plaintiff containing notice of dishonor of the note was a question for the jury upon conflicting evidence.

8. BILLS, NOTES AND CHECKS—*Notice of Dishonor—Due Diligence—Question for Jury—Case at Bar.*—In the instant case, the payee of a note mailed an accommodation endorser a letter to one of two places where the endorser received mail, stating that the note had been dishonored and that the payee would hold the endorser liable.

*Held:* That whether the plaintiff gave the defendant due notice of the dishonor of the note or used due diligence to give him such notice was a question for the jury.

Error to a judgment of the Circuit Court of Pittsylvania county in a proceeding by motion for a judgment for money.  Judgment for plaintiff.  Defendant assigns error.

*Affirmed.*

The opinion states the case.

*E. C. Hurt, Jr.,* and *Harris, Harvey & Brown,* for the plaintiff in error.

*McCormick & Vansant* and *Leon M. Bazile,* for the defendant in error.

WEST, J., delivered the opinion of the court.

Bibee Grocery Company, Incorporated, brought action against J. E. Myers, as accommodation endorser, and recovered a judgment for $669.08, to which this writ of error was allowed.

The parties will be referred to as plaintiff and defendant, with respect to their positions in the trial court.

The plaintiff was a wholesale merchant in the city of Lynchburg, Virginia.  Yeager & Myers were engaged in the mercantile business at Motley, Pittsylvania county, Virginia, and purchased merchandise from the plaintiff.  Yeager was a son-in-law and Myers a son of the defendant, and the defendant was a frequent visitor in their homes at Motley.  His visits were frequently of several days duration.  Plaintiff required Yeager & Myers to execute to it a negotiable note for $1,000.00, on which the defendant was accommodation endorser.  This note was curtailed and renewed every thirty or sixty days, and, finally, on May 28, 1924, was renewed for $669.08, payable

sixty days after date, at the Lynchburg National Bank.

Between April, 1923, and May 28, 1924, plaintiff had occasion, five or six times, to communicate with defendant to have him endorse renewal notes. He enclosed the notes to Yeager at Motley and they were returned to him from Motley properly endorsed by the defendant. All letters written by the plaintiff to the defendant were mailed in envelopes with plaintiff's address thereon as follows: "After five days return to Bibee Grocery Company, Incorporated, Box 54, Lynchburg, Virginia." Not one of these letters was ever returned to the plaintiff.

To two letters written to defendant at Motley, Virginia, on April 29, 1924, and May 30, 1924, respectively, informing him when the notes would fall due and that the last note must be paid at maturity, plaintiff received no reply. Upon the maturity of the note on July 28, 1924, it was presented for payment at Lynchburg National Bank, Lynchburg, Virginia, and payment was refused. The plaintiff thereupon wrote and mailed to the defendant the following letter:

*"July 28, 1924.*

"MR. JOHN E. MYERS,
    *"Motley, Virginia.*
"DEAR SIR:

"A note for $669.08, given us by Yeager & Myers on May 28, 1924, was due today, and as you are endorser on this note, we are writing to advise you that the same is due and to advise you of your liability for the payment of the same, in lieu of having same protested.

"We will ask that you gentlemen please arrange to let us have payment of this note at once as the same cannot be renewed.

"Very truly yours,
        "BIBEE GROCERY CO., INC."

This letter was never returned to the Bibee Company, nor did they receive any reply thereto.

Defendant (plaintiff in error) alleges that the court erred:

(1) In refusing to discharge the jury and enter judgment for the defendant;

(2) In giving instruction No. 1 for the plaintiff;

(3) In refusing to give an instruction offered by the defendant;

(4) In refusing to set aside the verdict of the jury and enter judgment for the defendant.

Assignments of error (1) and (4) involve practically the same question, and No. 1 will be passed upon in considering No. 4. The second assignment relates to the giving of plaintiff's instruction No. 1, and the third assignment involves the refusal of the court to give instruction No. 3, asked for by the plaintiff.

[1] The defendant having failed to state the ground of his objection to the rulings of the court in these matters, as required by Rule 22, this court will not consider these assignments of error.

This brings us to the consideration of the fourth assignment of error to the action of the court in refusing to set aside the verdict of the jury and enter judgment for the defendant, under section 6251 of the Code.

[2, 3] (a) In order to hold an endorser liable, he must have notice that the note has been dishonored, or reasonable diligence must be used to give him such notice. A negotiable note is dishonored only when it is presented for payment according to its terms and payment is refused.

[4] It appears from the evidence that the note upon which this action is based was presented for payment at the Lynchburg National Bank on the day it was due, and that payment was refused, because makers had

no money in bank with which to pay the note, and that the holder on that day mailed to the endorser the letter hereinabove quoted, informing him that the note had been dishonored.

Virginia Code, section 5658, provides: "The notice may be in writing or merely oral and may be given in any terms which sufficiently identify the instrument and indicate that it has been dishonored by nonacceptance or nonpayment. It may in all cases be given by delivering it personally or through the mails."

It is contended that the notice was insufficient, but when inspected it meets the requirements of section 5658, *supra*, since the language used is sufficient to "identify the instrument and indicate that it has been dishonored by * * nonpayment." While it does not, in terms, say that the note has been presented and payment refused, it does so state by implication. It describes the note and tells the endorser that the holder will look to him for payment and that plaintiff is writing him this letter "in lieu of having the note protested." The holder could not look to the endorser for payment if the note were not unpaid, and could have the note protested only when it had been presented for payment and payment refused.

In the case of *Doherty* v. *First National Bank of Louisville*, 170 Ky. 810, 186 S. W. 937, the notice to the endorser was as follows: "Two notes of the Paracamph Company for $5,103.35 each bearing the endorsement of Geo. M. Boone, C. C. McClarty and yourself matured in this bank on the 11th inst., and are not attended to. Please call at once and pay these notes and oblige * *." This case was decided under that section of the negotiable instruments law which corresponds with section 5658 of the Virginia

Code, *supra.* In sustaining the sufficiency of the notice, the court said: "It is argued that the notes are not for $5,103.55 each but for $5,000.00 each, and are, therefore, not correctly described; and that the letter contained no statement that the notes had been presented for payment and payment refused. The statute provides that the notice may be given in writing, and may be given in any terms which sufficiently identify the instrument and indicate that it has been dishonored by nonacceptance or nonpayment. Kentucky Statutes, subsection 96, section 3720b. Including the interest, the amount due on each of the notes was $5,103.55. It will thus be seen that the notice gives the amount of the notes, the date of their maturity and the names of the maker and the several endorsers, of whom the person receiving the notice was one. There can be no question that the language of the notice was sufficient to identify the notes concerning which it was given. Furthermore, the notice shows that the notes in question were not attended to. This statement is followed up by the further direction that defendant 'please call at once and pay these notes.' Clearly these statements were sufficient to indicate to the defendant that the notes in question had been dishonored by nonpayment."

In *Cromer* v. *Platt,* 37 Mich. 132, 134–5, the notice, after describing the note and stating that the plaintiff held it, contained these words: "The note being endorsed by you, and not paid at this date, we look to you for payment   *   *." The court, holding the notice sufficient, said: "There are cases both numerous and respectable which have held such a notice insufficient. No particular form of notice can be laid down as requisite, and the discussion has always been con-

cerning the sufficiency in each case to inform the endorser of what was claimed as fixing his liability.

"We think that altogether too much force has been given to technical phrases in such notices. A notice, whatever be its form, cannot bind unless the paper has been legally dishonored, and every endorser must be presumed to know what action will bind him and what will not. Notice need not be given by a notary. Any holder may give it for himself and in his own language. Negotiable paper is used by all classes of men and for all manner of purposes, and in a large class, if not in the majority of cases, credit is given to the endorser and he knows it. He is entitled to have his liability established by the necessary measures. But there is no reason why courts should strain matters, as they often have done to discharge persons from liability when they have not been misled in any way by the notices sent them. As a matter of fact, every endorser who receives a notice of nonpayment, and that he is looked to for payment, knows that such a notice would not have been sent unless it was supposed the proper steps had been taken to charge him."

In *Youngs* v. *Lee*, 12 N. Y. 551, 554, the notice simply informed the defendant that a note for $1,000.00 endorsed by him "is protested for nonpayment and that the holders look to you for payment thereof."

The court sustaining the sufficiency of the notice said: "* * the statement in this notice, dated on the day when the note was payable, that it had been protested for nonpayment, must be intended to mean that it had been demanded and payment refused upon the day when it became due."

In *Burgess* v. *Vreeland*, 4 Zab., 24 N. J. Law 71, 59 Am. Dec. 408, we find this: "It is objected that the proof does not show that the notice contained the

essential requisite, that it was duly presented to the maker at its maturity. But it is neither necessary nor usual to state formally that the note has been presented to the maker for payment. The usual form of the notice is simply that the note has been protested for nonpayment. That involves the idea that it was presented for payment. *Mills* v. *U. S. Bank*, 11 Wheat. 431 [6 L. Ed. 512]."

In *Saltmarsh* v. *Tuthill*, 13 Ala. 390, 402–3, it was contended that the notice was fatally defective because it did not state that the instrument had been presented for payment. The court, overruling this contention, made this statement: "In addition to the description of the bill, the notice in question states that the bill was protested by the notary for nonpayment on the day of its date, and that the holder looks to the responsibility of the defendant. It is not essential to a notice that it should affirm that the bill was duly presented for payment and that payment was refused. This is intended from the recital of the fact that the bill was protested for nonpayment. If the protest was irregular, or made without a due presentment, it was competent for the defendant to have shown the fact, and thus have destroyed its effect and made the notice unavailing."

In *Paul* v. *Joel,* 3 H. & N. 455–460, the notice read thus: "Bosville's acceptance to Mr. Joel, 500 1, due 12th January, is unpaid: Payment to Roberts Company is requested before 4 o'clock." The court held the notice of dishonor sufficient and said: "* * any person of common understanding would predicate that the bill had been presented for payment and dishonored * *."

[5] In 4 Am. & Eng. Ency. L. (2d ed.) 421, the law is stated thus: "The rule was laid down in the earlier

authorities that notice ought by express terms or by necessary implication to convey full information that the paper has been dishonored.   But according to the later decisions a notice is sufficient if the fact of dishonor appears by reasonable intendment, and will be inferred by any man of business."

Our conclusion is that the notice contained in the letter of July 28, 1924, was sufficient.

[6] (b)  Did the plaintiff give the defendant due notice that the note had been dishonored or exercise reasonable diligence to give such notice?

Defendant's home was at Toshes, fifteen miles from Motley, but he was a frequent visitor in the homes of his son and son-in-law, Mr. Yeager, at Motley.   The Motley postoffice was located in the store of Yeager & Myers, and Mr. Yeager was the postmaster.   All the transactions plaintiff had with the defendant were through the Motley postoffice.   All the letters plaintiff wrote defendant were addressed to him at Motley, Virginia.   All of plaintiff's letters carried its address on the corner of the envelope:   "After five days return to Bibee Grocery Company, Box 54, Lynchburg, Virginia."   The Federal statute required the postmaster to deliver to defendant the letters which were received, addressed to him, or to return them to the sender.

The amended Federal statute, section 7421, U. S. Comp. Stats. (R. S. 3939) reads as follows:   "When the writer of any letter on which the postage is prepaid shall indorse on the outside thereof his name and address, such letter shall not be advertised, but, after remaining uncalled for at the office to which it is directed the time the writer may direct or the postmaster general prescribe, shall be returned to the writer without additional charge for postage, and if not then delivered, shall be treated as a dead letter."

Not one of the letters addressed to the defendant at Motley was ever returned to the plaintiff.   Defendant's son-in-law, the postmaster, knew the whereabouts of the defendant when he was not in Motley, and is presumed to have discharged his duty under the law by delivering the letters to the addressee in person or by mail.

It is evident that defendant received a part of his mail at Motley and a portion of it at Toshes.   The defendant denied that he ever received the letter of July 28, 1924; but it was for the jury to decide whether his testimony, under the circumstances of the case, was sufficient to overcome the presumption that the postmaster, knowing the postoffice address of the defendant, delivered the letter to him.

In *Covell* v. *Western Union*, 164 Mo. App. 630, 637, 147 S. W. 555, 558, quoting from 16 Cyc 1071, the court said: "Testimony of the addressee that the letter was not received should be received with caution—with the greatest amount of caution—where non-receipt, if proved, would relieve him of burden;   *   *."

In *Briggs* v. *Hervey*, 130 Mass. 186, 188, the court stated the law thus: "The evidence that letters were so deposited was competent, and should have been submitted to the jury to be weighed by them in connection with the other evidence in the case.   They alone have the right to decide whether the inference that the letters were received, founded upon the probability that the officers of the government will do their duty and that letters will be duly delivered, is overcome by the other evidence."

In *Judge* v. *Masonic Mut. Benf. Association*, 30 Ohio Cir. Ct. Rep. 133, we find this: "We think it was correct to charge that if at that time mail addressed to Mrs. Judge at 408 Segur avenue was customarily

delivered to her—that is to say, if, in the usual course of the postoffice department's business, by reason of knowledge they had of her true address, or from any cause, it was customarily delivered at her true address, 1538 Western avenue, precisely as if it had been directed to 1538 Western avenue—then from that a presumption would arise that the notice had been received by her."

In *Brewster* v. *Shrader*, 26 Misc. Rep. 480, 57 N. Y. S. 606, this is said: "The second question in the case may be very briefly disposed of. It is concededly a close question, upon the facts of this case, whether the plaintiffs exercised the 'reasonable diligence' required by the statute in sending notice of dishonor of the note in suit to the defendant. But we think this question was properly submitted to the jury as a question of fact. Reasonable diligence is all that law requires. The law does not exact every possible exertion which might have been made to effect notice of the dishonor of the paper. *Bank* v. *Darling*, 91 Hun, 236, 36 N. Y. Supp. 153. What is reasonable diligence depends upon the circumstances of each case. In this case the plaintiffs were informed that the defendant was the proprietor of a milk route, which was, in fact, true. It appears that this route is in the village of Salamanca, and that defendant is in said village substantially every day. West Salamanca, although it has a separate postoffice, seems to be but a suburb of Salamanca. After receiving notice from the bank in Salamanca that the note had not been paid, the plaintiffs had until the evening of the following day in which to send notice to the defendant. The question of what is reasonable diligence must be determined with reference to what would have suggested itself as necessary, under the existing circumstances, to the man of ordinary prudence and intelligence."

At page 611 (26 Misc. Rep. 486) the court adds: "Plaintiffs were not called upon to assume that the note would not be paid at maturity. The acts done by the plaintiffs, supplemented by the failure to return the notice sent by them pursuant to the direction upon the envelope in which the notice was contained; and the denials by the defendant that he ever received such notice, and his proof that he received all his mail at West Salamanca, and none at Salamanca, established conditions under which men might reach different conclusions upon the question whether the plaintiffs had exercised due diligence or not; and, therefore, we think it was a question for the jury. Defendant's motion for a new trial is denied,   *   *."

[7, 8] For the foregoing reasons, we think it was for the jury to say whether plaintiff gave the defendant due notice of the dishonor of the note, or used due diligence to give him such notice. They have found in favor of the plaintiff, and we cannot say their verdict is contrary to the evidence or without evidence to support it.

*Affirmed.*