COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Felton and McClanahan
Argued at Alexandria, Virginia


ROBERT DALE BURROUGHS

                                        MEMORANDUM OPINION[*] BY
v.       Record No. 3043-03-4        JUDGE JEAN HARRISON CLEMENTS
                                             SEPTEMBER 14, 2004

FREDERICK (COUNTY OF) SCHOOL BOARD
AND VIRGINIA MUNICIPAL GROUP
SELF-INSURANCE ASSOCIATION


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Kathleen G. Walsh for appellant.

        Ralph L. Whitt, Jr. (Jennifer C. Williamson; Whitt & Associates, on
        brief), for appellees.


        This appeal arises from a decision of the Workers' Compensation Commission

(commission) denying the application of Robert Burroughs (claimant) for temporary total

disability payments and continued medical benefits.  On appeal, claimant contends the

commission erred in finding that the doctrine of imposition did not operate to save his claim

from the statute of limitations bar.  Finding no error, we affirm the commission's decision not to

invoke the doctrine of imposition.

        As the parties are fully conversant with the record in this case and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  BACKGROUND

In accordance with familiar appellate principles, we view the evidence in the light most favorable to employer, the prevailing party below.  See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).  So viewed, the evidence established that, on May 25, 1996, while in the employ of the Frederick County School Board (employer), claimant sustained an injury to his back.  He received medical treatment that was paid for by employer and was given light duty work by employer.  Between May 1996 and August 1998, claimant continued to work in a limited capacity and receive medical treatment for his injured back.

Claimant testified that he took his medical bills and treatment reports relating to his work-related injury to the Human Resources department (HR), where he dealt with HR staff members Elizabeth A. Patterson and John F. Huntsberger.  Claimant further testified that, when he dropped off his medical bills and reports at HR he would ask, "Do I need to do anything else with this?" and Huntsberger or Patterson would respond that "they would take care of everything" and that "everything was taken care of."  Claimant testified that he understood the HR personnel's response to mean that there was nothing else he needed to do with respect to his workers' compensation benefits, including the preservation of his continuing rights to those benefits.

Patterson, an HR analyst, testified that she did not recall "handl[ing] or participat[ing] in any way in the handling of [claimant's] workers' compensation claim from 1996 to . . . 1998" and did not recall "hav[ing] any conversations with [claimant] about his 1996 workers' compensation claim at any time."  She further testified that, if claimant or anyone else had asked her questions about their workers' compensation claim, she "would have directed them to someone else," because that was not her responsibility.

Huntsberger, the HR coordinator, testified that he had no recall of claimant ever presenting a medical bill or other document pertaining to his 1996 workers' compensation claim to him or of ever having "any conversations with [claimant] about any aspect of his 1996 workers' compensation claim" prior to September 1998, much less assuring claimant that "everything" was taken care of or that they would take care of "everything." Asked how he would have handled a situation where an employee "dropped off a bill or a medical report and . . . asked [the HR personnel] if there was anything else that they had to do," Huntsberger testified as follows:

> I guess it would depend upon what they're asking about having to do, all our responsibility was, was to send the bill on to [the insurance carrier handling the workers' compensation claims,] so if they're asking about that I would have said no, the, the bills will be taken care of, we'll send them into [the insurance carrier], if that's what you mean.

Claimant also testified he was led to believe by his supervisor, Larry E. Rickard, that all he needed to do was fill out the accident report and submit his medical bills and "everything" concerning his workers' compensation claim "would be taken care of." According to claimant, after submitting paperwork he got from doctors for the treatment he received two or three times a week, he would ask Rickard if there was "anything else [he] need[ed] to do" and Rickard would respond, "[N]o, . . . we'll take care of it." Claimant testified that he understood from this response that the forms he had already filled out and the documents he had submitted were all that was necessary to preserve his claim.

Rickard testified that he did not recall claimant ever asking him if his "workers' compensation claim [was] taken care of" or if "there [was] anything else [he had] to do" relative to the claim itself. Rickard further testified that, upon learning of claimant's injury on May 25, 1996, he gave claimant the necessary forms to report the accident and informed him of employer's procedure for doing so: "fill out the proper forms and we'd submit them to . . . HR"

- 3 -

and "HR would deal with the paperwork" and "do whatever [was] necessary." According to Rickard, his office was only responsible for sending the workers' compensation notification to HR, and all related paperwork submitted to his office was simply passed on to HR. Rickard also testified that, when claimant asked him about his workers' compensation claim, he would tell claimant "that he needed to work through [HR]," because Rickard did "not have the expertise to deal with Workers' Comp[ensation]."

Connie W. Jones, claimant's claims adjuster, testified that she never told claimant that "he need do nothing further in terms of perfecting . . . or preserving his workers' compensation claim." Jones further testified that claimant never contacted her "to ask if there was anything he needed to do regarding his workers' compensation claim or anything he needed to file or whether everything was taken care of or not." Jones also specifically denied claimant's allegation that she advised claimant "not to file anything with the commission regarding [his] May 25, 1996 claim."

In August 1996, employer filed a Form 45A report of minor injury with the commission. In January 1997, when claimant's medical bills, which had been paid by employer, exceeded $1,000, employer filed an Employer's First Report of Accident (EFRA) with the commission. That report listed claimant's street address as "133 Chyenne Trail." Claimant testified that his correct address was "133 Cheyenne Trail." The EFRA indicates that it was prepared for employer by "Cathy L. Carpenter," but no evidence was offered regarding the source of the misspelling.

On February 6, 1997, the commission sent a "blue letter" to claimant, detailing the procedure he must follow to preserve his rights under the Workers' Compensation Act. That letter was sent to claimant at "133 Chyenne Trail." Claimant testified that he did not receive the letter. However, the "blue letter" was not returned to the commission as undeliverable.

- 4 -

On August 11, 1998, employer refused payment on a medical procedure for claimant, because no claim for benefits had been filed. On August 31, 1998, claimant filed a claim for benefits. On September 17, 1998, the commission wrote claimant and informed him that his claim was barred by the statute of limitations. Claimant acknowledged that he received that letter, which was sent to him at "133 Cheyenne Trail." The commission's letter explicitly allowed claimant to provide a written explanation to the commission within two weeks detailing why the two-year time limit should be extended in this case. Claimant did not respond until March 8, 2002, at which time he advised the commission that he had a legal reason for extending the filing deadline. Asked why he did not respond to the commission's September 17, 1998 letter, claimant testified that, although he understood the letter's contents, he believed there was nothing else he could do to preserve his claim.

On March 6, 2002, claimant requested a hearing by the commission on his claim. On February 20, 2003, after conducting a hearing on the matter, a deputy commissioner denied claimant's claim on the ground that his application was barred by the statute of limitations contained in Code § 65.2-601. In reaching that decision, the deputy commissioner found that the doctrines of imposition and estoppel were inapplicable because employer "did nothing to prejudice . . . claimant or to induce him not to file the claim." On review, a majority of the full commission affirmed the deputy commissioner's decision.

This appeal followed.

## II. ANALYSIS

On appeal, claimant argues that, although he did not file a claim with the commission within two years of his 1996 work-related accident, the doctrine of imposition should apply to save his claim from the statute of limitations bar because (1) employer's representatives, including his supervisor, advised him, in response to his inquiries, that he did not need to do

- 5 -

anything else with regard to his claim and (2) he never received the commission's February 6, 1997 "blue letter" instructing him how to preserve his claim because employer provided the commission with an incorrect spelling of his street address. Thus, he contends the commission erred in finding that the doctrine of imposition did not apply in this case. We disagree.

"Matters of weight and preponderance of the evidence, and the resolution of conflicting inferences fairly deducible from the evidence, are within the prerogative of the commission and are conclusive and binding on the Court of Appeals." Kim v. Sportswear, 10 Va. App. 460, 465, 393 S.E.2d 418, 421 (1990) (citation omitted); see also Code § 65.2-706(A). "If there is [credible] evidence, or reasonable inferences can be drawn from [credible] evidence, to support the [c]ommission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding." Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

It is well established that, where an injured employee fails to file a claim for compensation with the commission within two years of the work-related accident, his or her right to compensation "shall be forever barred." Code § 65.2-601. "Timely filing of an original claim is jurisdictional . . . ." Massey Builders Supply Corp. v. Colgan, 36 Va. App. 496, 502, 553 S.E.2d 146, 149 (2001). Moreover, "an employer has no affirmative duty under the [Workers' Compensation] Act to inform an injured employee of the need to file a claim with the commission within the statutory period . . . ." Jenkins v. Ford Motor Co., 27 Va. App. 281, 288, 498 S.E.2d 445, 449 (1998).

However, as claimant correctly points out, the commission has equitable jurisdiction under the doctrine of imposition "to do full and complete justice in each case." Harris v. Diamond Const. Co., 184 Va. 711, 720, 36 S.E.2d 573, 577 (1946); see also John Driggs Co. v. Somers, 228 Va. 729, 734, 324 S.E.2d 694, 697 (1985). The imposition doctrine "empowers the commission in appropriate cases to render decisions based on justice shown by the total circumstances even though no fraud, mistake or concealment has been shown." Avon Products, Inc. v. Ross, 14 Va. App. 1, 7, 415 S.E.2d 225, 228 (1992). "The doctrine focuses on an employer's or the commission's use of superior knowledge of or experience with the Workers' Compensation Act or use of economic leverage, which results in an unjust deprivation to the employee of benefits warranted under the Act," and "applies where, *inter alia*, the record shows a series of acts by the employer or the commission upon which a claimant naturally and reasonably relies to his or her detriment." Butler v. City of Virginia Beach, 22 Va. App. 601, 605, 471 S.E.2d 830, 832 (1996) (citing Odom v. Red Lobster # 235, 20 Va. App. 228, 235, 456 S.E.2d 140, 143 (1995)). "The issue is whether under the totality of the circumstances shown, the actions of the employer and its carrier created an imposition on the commission and the claimant which empowered the commission 'do full and complete justice.'" Avon Products, Inc., 14 Va. App. at 8, 415 S.E.2d at 229.

In Avon Products, Inc., for example, we approved an award where the claimant had not timely perfected her claim, because, in response to the claimant's specific inquiry about the filing of a document required to perfect her claim, the employer incorrectly informed the claimant that "whatever was necessary to protect her interests had been done." Id. at 3, 415 S.E.2d at 226. Likewise, in Odom, we permitted the claimant's late filing of a claim because the employer and the commission mistakenly led her to reasonably believe that a timely claim had already been filed. 20 Va. App. at 235, 456 S.E.2d at 143. In fact, the commission specifically informed

Odom "that she '[had] a claim number and it had been filed and everything [was] all right' with her claim" and later told her attorney "that the claim had been filed." Id. at 232, 456 S.E.2d at 142.

Here, however, viewed in the light most favorable to employer, the evidence fails to show that employer or the commission said or did anything that prevented claimant from filing a claim or led him to *reasonably* believe that he did not need to file a claim. Indeed, unlike in Avon Products, Inc. and Odom, neither employer nor the commission ever represented to claimant that all the documents necessary to perfect his claim had been timely filed. Likewise, no evidence suggests that employer or the commission otherwise incorrectly informed claimant about any aspect of his claim or used "superior knowledge of or experience with the Workers' Compensation Act" to deprive him of benefits. Butler, 22 Va. App. at 605, 471 S.E.2d at 830.

Plainly, any assurances claimant received from employer's HR staff that "they would take care of everything" and that "everything was taken care of" were limited to the specific medical bill or treatment report that claimant was submitting to HR for processing at the time. The assurances were given exclusively in response to claimant's routine inquiry when he dropped off a bill or report as to whether he "needed to do anything else with *this*?" Thus, such assurances could reasonably be interpreted to mean only that the specific bill or report submitted by claimant would be processed and submitted to the insurance carrier without the need for claimant to do anything else. They did not refer to or encompass the status of claimant's overall workers' compensation claim.

Similarly, the assurances claimant received from his supervisor that "we'll take care of it" and that "HR would deal with the paperwork" and "do whatever [was] necessary" did not refer to the perfection of claimant's overall claim and did not constitute a representation that the employer would file a claim for benefits on his behalf. In fact, claimant himself testified that his

inquiries to Rickard whether he needed to do anything else were made solely in connection with his submission of the treatment reports he received from his doctors. Likewise, Rickard testified that he had no recollection of claimant ever asking him whether his overall claim was "taken care of" or whether there was anything else he needed to do with regard to the claim itself. Rickard further testified that he told claimant to direct any questions he had regarding his workers' compensation claim to HR because Rickard did "not have the expertise to deal with Workers' Comp[ensation]." Thus, claimant could not reasonably rely on Rickard's assurances regarding the processing of specific treatment reports as meaning that claimant's claim for benefits was filed with the commission or that claimant did not need to do anything else to perfect his claim.

Furthermore, although claimant testified he did not receive the commission's "blue letter" informing him how to preserve his claim, as the commission noted, the commission's "file does not reflect that its 'blue letter' sent to [claimant] at the '133 Chyenne Trail' address was returned by the United States Postal Service as undeliverable." Thus, the commission was entitled to presume that the letter was received by its intended recipient. See Myers v. Bibee Grocery Co., 148 Va. 282, 291-94, 138 S.E. 570, 573-74 (1927) (observing that, where notice letters are addressed with dubious dependability but are not returned to sender by the post office, it is a question of fact whether such letters have been received). And, though the claimant in his testimony offered evidence to rebut that presumption, the commission, in its exclusive purview as the finder of fact, was under no obligation to find that he had done so. See id.; Manassas Park Development Co. v. Offutt, 203 Va. 382, 385, 124 S.E.2d 29, 31 (1962) (noting that "a denial by the addressee of the receipt of the letter raises an issue of fact" for the fact finder).

Additionally, even if the commission had accepted the claimant's testimony that he never received the "blue letter," no evidence was offered that the misspelling was the fault of the employer. If the misspelling was caused by claimant, rather than employer, the imposition

- 9 -

doctrine would not operate to preserve claimant's right. See Butler, 22 Va. App. at 605, 471 S.E.2d at 832 (declining to apply the doctrine of imposition where the imposition "resulted from claimant's own act"). Since no evidence on the issue was offered, the commission could properly conclude that the record did not establish that claimant's failure to receive the "blue letter" was employer's fault, rather than his own. Furthermore, as the commission noted, "claimant's failure to receive [the 'blue letter'] alone would not be grounds to apply the doctrine of imposition." See Jenkins, 27 Va. App. at 292, 498 S.E.2d at 451 ("Whether an employee has received a 'blue letter' or guide outlining commission procedures and the claim filing requirement is [but] one circumstance to be considered in evaluating the totality of the circumstances.").

Similarly, we have held that "the doctrine of imposition does not apply where a carrier's or employer's acts are consistent with an endeavor to comply with the [Workers' Compensation] Act." Odom, 20 Va. App. at 234, 456 S.E.2d at 143 (citing Cheski v. Arlington County Pub. Schs., 16 Va. App. 936, 940, 434 S.E.2d 353, 356 (1993)). In this case, nothing in this record indicates that employer did not endeavor to comply with the requirements of the Workers' Compensation Act. To the contrary, employer accommodated claimant's physical limitations, paid for his medical treatments pertaining to his work-related injury, and properly filed a Form 45A report of minor injury and an EFRA with the commission.

We conclude, therefore, that claimant's failure to file a claim for compensation with the commission within two years of his 1996 work-related accident cannot be blamed on employer or the commission. This conclusion is buttressed by the fact that, when notified by the commission that he could provide a written explanation within two weeks explaining why the two-year time limit should not apply to bar his claim, claimant did not respond for more than three years.

> Although expiration of the statute of limitations on this claim was unfortunate, it did not result from employer's or the commission's use of superior knowledge or economic leverage. To create an exception to the bar of the statute of limitations under circumstances such as these would, in effect, allow the exception to swallow the rule.

Jenkins, 27 Va. App. at 293, 498 S.E.2d at 451.

Accordingly, we affirm the commission's decision that, upon the facts and circumstances of this case, the doctrine of imposition did not apply to permit claimant's late filing of his workers' compensation claim.

Affirmed.