# Richmond.

## NORFOLK SOUTHERN RAILROAD COMPANY v. W. E. HUDGINS.

### March 22, 1928.

### Absent, Burks, J.

1. CARRIERS—*Action for Delay in Transportation of Potatoes—Question of whether the Potatoes should have been Delivered at New York in Two or Three Days—Evidence—Abandoned Schedule of Railroad.*—In the instant case, an action for delay in a shipment of potatoes from Princess Anne county, Virginia, to New York, the question at issue was whether the potatoes should have been delivered in two days or in three. The shipment was in 1925. It appeared that prior to 1920, defendant railroad attempted to put in force a two-day delivery schedule between the point of shipment and New York. This schedule was soon abandoned, and at a meeting of twenty representatives of exchanges and commission merchants, called by the division freight and passenger agent of the defendant railroad, it was announced that the time of delivery of potatoes for the New York market would be three days. Plaintiff was not present at this meeting and claimed not to be bound thereby.

    *Held:* That as there was no evidence in the record showing that he relied upon any representation of the defendant that there would be a two-day delivery of the potatoes, he was bound by the general action taken at the meeting held in 1920.

2. CARRIERS—*Action for Delay in Transportation of Potatoes—Verdict for Plaintiff against Weight of Evidence—Appeal and Error—Reversal where Judgment was Plainly Wrong or without Evidence to Support it—Section 6363 of the Code of 1919—Case at Bar.*—The instant case was an action by a shipper against a carrier to recover damages for alleged delay of one day in the transportation of Irish potatoes from Princess Anne county to New York city. Sundry truckers, consignees, and commission merchants testified generally that the shipment should have arrived at destination in two days from the time received by the carrier, whereas it did not arrive for three days. Defendant put in evidence undisputed records showing that of eighteen cars shipped from that vicinity during the season sixteen

arrived for the third day's market. The arrival of the other two cars for the second day's market was explained by the fact that they were, contrary to custom, attached to a fast perishable goods train. There was evidence for the plaintiff that defendant's agents had informed the witnesses that the potatoes would reach New York in two days; but this evidence was stricken out because the witnesses could not designate with any degree of definiteness the so-called agents, or connect them with the defendant. There was a verdict for plaintiff.

*Held:* That the verdict for the plaintiff fell within the provision of section 6363 of the Code of 1919, and would be set aside by the Supreme Court of Appeals as plainly wrong.

3. APPEAL AND ERROR—*Case on Appeal as on a Demurrer to the Evidence— Sections 6251 and 6363 of the Code of 1919.*—While perhaps on a demurrer to the evidence by the defendant the appellate court might be compelled to accept the statement of a witness for demurrer as true, under sections 6251 and 6363 of the Code of 1919, it does not have to accept as true evidence for appellee, when to do so would strain the credulity of the court to the breaking point, and require the entry of a judgment contradicted by every other fact and circumstance of the case, in conflict with the testimony of numerous witnesses of high character, and manifestly against right and justice. It is extreme cases of this sort that the statute was enacted to meet.

4. APPEAL AND ERROR—*Reversal—Section 6363 of the Code of 1919—Purpose of the Change of Language in the Revision of 1919.*—It appears from the revisors' note to section 6363 of the Code of 1919, that the purpose in the change of the language from the rule of decision in the appellate court in considering the evidence in the case shall be "as on a demurrer to the evidence by the appellant," to the language of section 6363 of the Code of 1919, that "the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it," was to abolish the rule of decision theretofore adhered to.

5. JUDICIAL NOTICE—*Higher Rate for Perishable Freight.*—The Supreme Court of Appeals will take judicial notice of the fact that highly perishable products, such as tomatoes, cucumbers, beans, etc., shipped in iced cars, and transported by fast freight, bear a higher tariff rate than ordinary products not so liable to decay, transported in ordinary freight trains.

6. CARRIERS—*Rates—Right of Carrier to Higher Rate for Perishable Freight— Case at Bar.*—In the instant case, an action for damages for delay in the shipment of potatoes, the verdict and judgment were for the plaintiff. The potatoes were delivered in three days and the contention of plaintiff was that they should have been delivered in two days. The effect of this holding of the trial court was to impose

upon the defendant carrier the onerous burden of transporting such products as potatoes from the vicinity of Norfolk to the New York market in a fast freight train, for the same transportation rate as was charged for transportation by ordinary freight. It appeared that potatoes, if properly packed, did not decay if subjected to the average movement of three days.

*Held:* That to compel a carrier to perform an unusual service for an inadequate consideration, subjecting it to loss, amounted to a confiscation of its property, and this is inhibited both by the State and Federal Constitution.

7. APPEAL AND ERROR—*Conflict in Evidence—Section 6363 of the Code of 1919.*—While the Supreme Court of Appeals adheres to the general rule that upon questions where the evidence is conflicting the verdict of the jury should not be disturbed; it is of the opinion that the language placed by the revisors in section 6363 of the Code of 1919, "unless it appears from the evidence that such judgment is plainly wrong," should not be held to be meaningless.

Error to a judgment of the Circuit Court of Princess Anne county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*C. M. Bain* and *Jas. G. Martin,* for the plaintiff in error.

*Old & Brockenbrough,* for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This is a writ of error to a judgment for $827.00, rendered against plaintiff in error (defendant in the court below), in an action of trespass on the case, brought by the plaintiff, Hudgins, to recover damages caused by the alleged delay of one day in transporting a carload of Irish potatoes from Princess Anne county to New York city.

On July 9, 1925, the plaintiff shipped four cars of potatoes from Denny's and Shelton, in Princess Anne county, to commission merchants in New York city, over defendant as initial carrier, duly receiving therefor bills of lading. In the course of shipment the potatoes had to move over the defendant's line from Denny's and Shelton to Norfolk; over Norfolk and Portsmouth Belt Line Railroad from Norfolk to Pinners' Point, where they were delivered to the Pennsylvania Railroad; from Pinners' Point they moved by barge across Chesapeake Bay to Cape Charles; at Cape Charles solid potato trains were made up and these potatoes, and others, moved via Philadelphia to Jersey City, where they were again placed upon barges to be transported to New York. The car herein involved arrived at its destination Sunday morning, July 12th, and was marketed July 13th. If it had arrived on Saturday, July 11th, it is shown by the plaintiff the potatoes would have brought a better price than the one received.

The court instructed the jury as follows:

(1). "The court instructs the jury that if they believe from the evidence there was negligence on the part of the defendant in delivering the goods at destination, and further believe that the goods arrived in bad condition, then the burden of showing that the damage to the goods was not due to the delay in transportation is upon the defendant."

(2). "The court instructs the jury that if they believe from the evidence that the plaintiff is entitled to recover, *through* then the damage sustained by the plaintiff is the market price in New York, N. Y., on the day upon which they should have arrived and been delivered to the consignees, after deducting the cost of transportation; commissions that would have been paid to consignees, terminal charges, and amount received

for goods by plaintiff; to which is to be added interest from the date they should have been delivered."

(3). "The court instructs the jury that unless they believe from the evidence that the plaintiff has proved that by the negligence of the carriers the shipments in question were unreasonably delayed and did not make the average time made by similar potato shipments, it is the duty of the jury to find for the defendant."

(4). "The court instructs the jury that if they believe from the evidence that the ordinary schedule on potato shipments was for third morning delivery after shipment, it is the duty of the jury to find for the defendant."

(5). "The court instructs the jury that the burden is upon the plaintiff to prove his case by a preponderance of the evidence before the jury can under their oaths find for him."

The error assigned is: The court erred in not setting aside the verdict as contrary to the law and the evidence, and in not entering judgment for the defendant.

The case for the plaintiff depends upon the weight to be placed on the testimony of sundry truckers, the consignees, and other commission merchants who testified generally that the shipment of potatoes should have arrived at destination in two days from the time received by the carrier.

To maintain its contention that the ordinary schedule and average movement of similar potato shipments from Princess Anne county to New York is for three days' delivery, the defendant put in evidence undisputed records showing all potato shipments from that vicinity to New York for the 1925 season, and showed, of eighteen cars shipped, sixteen arrived for third day's market. The arrival of the two cars for the second

day's market was explicitly explained by the witness, Ristine, as follows:

"Q. Tell about the trains.

"A. Potatoes are received on barges arriving at Cape Charles in units of twenty-six cars to a barge. They are accumulated and passed over what we call the hump tracks and classified, and we have a different track for different destinations. After the potatoes are billed up in these trains they go forward to the destination which they are destined to.

"Q. Would it be possible on some occasions to get one car load of potatoes on a highly perishable train, one that you filled in with?

"A. Yes, sir.

"Q. Tell about that train   *   *   *.

"A. In the first place, railroads are operated in this way: We take care of the passengers first, and the next thing we take care of is highly perishables, and the next thing is semi-perishables, and the next thing is what we call hard freight. A high class freight train hauls first class perishables, such as spinach, kale, tomatoes, beans and such as that. That is made up to run at a very high speed, and we limit it to forty to fifty-five cars, and it depends upon what time it gets out of the terminal as to whether we cut it or give it the full fifty-five cars. Sometimes we don't have the full amount of cars to put in it and in a case of that kind we would put on as a fill out any potatoes there might be which would account for their being on that train."

From the vicinity of Norfolk, the train carrying highly perishable products is called train D-2, and it appears in evidence that the two-day shipments in the year 1925 were involved with the shipments on this train. It also appears from defendant's evidence that

of one hundred and sixty-three cars of potatoes shipped over the line of the Pennsylvania Railroad, moving through Pinners' Point to New York, only fourteen cars reached New York for the second day's market. It is also made to appear from the testimony of railroad officials and from the testimony of representatives of the truck farmers, Southern Produce Company and Eastern Shore Produce Exchange—all large shippers of potatoes—that the average shipping time from and to the points involved was three days.

It is true that the plaintiff and sundry witnesses attempted to state that they were informed by agents of the defendant that potatoes delivered at Denny's and Shelton would reach the New York market in two days; but this evidence was stricken out by the court because the witnesses could not designate with any degree of definiteness these so-called agents, or connect them in anyway with the defendant.

[1] It also appears that some time prior to the year 1920 the defendant attempted to put in force a two-day delivery schedule, in order to meet the schedule then in operation by the Old Dominion Steamship Company. This schedule was soon abandoned, and in a meeting of twenty representatives of exchanges and commission merchants, called by the division freight and passenger agent of the Pennsylvania Railroad, at Norfolk, it was announced by that official that the time of delivery of potatoes for the New York market would be three days.

The plaintiff was not present at this meeting, and claims he should not be bound thereby; but, inasmuch as there is no evidence in the record showing that he relied upon any representation of the defendant that there would be a two-day delivery of his potatoes, he was bound by the general action taken at this meeting held in 1920.

[2, 3] In the face of the great preponderance of the evidence in favor of the defendant, it is most earnestly argued by the plaintiff that the statements of his witnesses that the ordinary time of shipment was a two-day period, produces such a conflict in the evidence that under the well recognized rule laid down in numerous decisions of this court on the questions of conflict of evidence that the verdict of the jury in his favor should not be disturbed.

This contention involves a consideration of section 6363 of the Code. This section, amongst other things, provides that "the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it."

In *Vandenbergh* v. *Buckingham Corp.*, 142 Va. 411, 128 S. E. 564, Judge Burks (Jr.), said: "Perhaps on a demurrer to the evidence by the defendant, we might be compelled to accept Vandenbergh's statement of the waiver by Johnson, but not so under our present statute (Code, sections 6251 and 6363), when to do so would strain the credulity of the court to the breaking point, and require the entry of a judgment contradicted by every other fact and circumstance of the case, in conflict with the testimony of numerous witnesses of high character, and manifestly against right and justice. It is extreme cases of this sort that the statute was enacted to meet."

[4, 5] In the revisors' note to section 6363, it is made to appear that the purpose in the change of the language from "the rule of decision in the appellate court in considering the evidence in the case shall be as on a demurrer to the evidence by the appellant," to the language of section 6363, quoted *supra*, was to abolish the rule of decision theretofore adhered to. This court

will take judicial notice of the fact that highly perish-able products, such as tomatoes, cucumbers, beans, etc., shipped in iced cars, and transported by fast freight, bear a higher tariff rate than ordinary products not so liable to decay, transported in ordinary freight trains.

[6] The effect of the holding of the trial court is to impose upon the defendant the onerous burden of transporting such products as potatoes from the vicinity of Norfolk to the New York market in a fast freight train, such as train D-2, for the same transportation rate as is charged for transportation by ordinary freight. This, too, in view of the established fact that potatoes, if properly packed, do not decay if subjected to the average movement of three days. To compel a carrier to perform an unusual service for an inadequate con-sideration, subjecting it to loss, amounts to confiscation of its property. This both the State and Federal Constitutions inhibit.

[7] While we adhere to the rule of decision as to the weight that should be given to the verdict of a jury upon a conflict of the evidence, we are of the opinion that the language placed by the revisors in section 6363, "unless it appears from the evidence that such judgment is plainly wrong," should not be held to be meaningless.

In *E. I. DuPont & Co.* v. *Brown,* 129 Va. 120, 105 S. E. 662, Judge Prentis uses the following significant language: "In cases like this, we are controlled by the statute, Code 1919, section 6363, and can only reverse the judgment of the trial court if it appears that the judgment is plainly wrong or without evidence to support it."

Invoking the rule laid down in the *Vandenbergh Case, supra,* we are of the opinion that the instant case

clearly falls within that decision. For these reasons, the judgment of the trial court will be reversed and final judgment entered in this court for the defendant.

*Reversed.*