# Richmond

## O. E. BRASWELL, ADMINISTRATOR, ETC., V. VIRGINIA ELECTRIC AND POWER COMPANY.

March 22, 1934.

Present, All the Justices.

28

The opinion states the case.

*Thomas A. Williams, L. C. O'Connor* and *George G. Burkhardt,* for the plaintiff in error.

*T. Justin Moore, Archibald G. Robertson* and *Norman L. Flippen,* for the defendant in error.

Holt, J., delivered the opinion of the court.

Plaintiff's decedent was killed when a motorcycle on which he rode came into collision with one of the defendant's street cars. His administrator has recovered a verdict for $2,500. That verdict the trial court set aside. Its action is challenged and the case is now before us on a writ of error.

The accident occurred in South Richmond on Hull street, just before 8 o'clock on December 13, 1930. Hull street runs north and south and numbered streets, whose numbers increase to the south, cross it at right angles. Cars pass in each direction on a single track which is not in the center of Hull street, but is somewhat nearer the western curb. The street, from curb to curb, is forty feet wide and the western rail of the car track is about twelve feet from its western curb.

Since the verdict was set aside because not adequately

supported by the evidence, it is necessary that the evidence be examined.

On the night in question, J. C. Bohannon, a witness, and Denis LaPrade rode south on a motorcycle and stopped about a fourth of a block north of 39th street. Bohannon got off and decedent and Noel Dorset got on. LaPrade drove; behind him sat Braswell on the mudguard and behind Braswell on the mudguard sat Dorset. Braswell held on to the seat and Dorset put his arms around Braswell. They started off at a speed estimated to be from five to eight miles an hour and had gotten just beyond 39th street when the witness turned and started walking north towards Richmond, and had gone some-where between thirty and fifty feet when he heard a crash to which he did not pay much attention. A small boy ran by him and said: "There's an automobile wreck. Three fellows ran into a street car." Bohannon then turned and ran to the point of accident, which was about a block and a half away. He said that the north end of the car was from forty-five to fifty feet from the corner of 40th street and that the motorcycle lay against the curb about twenty feet south of its north end. The bodies of the youths had just been taken away. He tells us that there was an automobile parked by the west curb of Hull street somewhere between forty-five and sixty feet north of 40th street. No headlight was burning on the north end of the street car. On cross-examination he said that he might have told Mr. Vaughan, the defendant's claim agent, that he first met Dorset and Braswell between 37th and 38th streets, that he "wasn't positive at that time where it was." The motorcycle was out of condition and would not make more than fifteen or twenty miles an hour.

D. R. Bowlin, another witness, was driving a truck south on Hull street. He saw a motorcycle stop between 39th and 40th streets about in front of 3905 Hull street. One boy got off and two got on. They drove south on Hull street about three-quarters of a block when they

cut around to the left to avoid a parked automobile and hit the street car. He said that that car had no headlight and he thought it was going the other way. As he remembers the physical facts the north end of the street car stood fifteen feet north of the north curb of 40th street, while the motorcycle and the bodies of the boys were four or five feet past its front end. The headlight of the motorcycle was still burning. He cut it off, moved the machine over, and helped to move the bodies.

W. O. Eggleston reached the point of accident soon after the collision. He said that the street car had passed 40th street, that it had cleared the intersection, but does not undertake to say how far away it was; that the motorcycle was about two feet to the right of the front of the car; that one of the boys had been taken away and the bodies of the other two lay between the car and the sidewalk, "just past the motorcycle a little way."

N. E. Norwood lives at 3910 Hull street, which is in the middle of the 3900 block and about a block and a half from the point of the accident. He was getting into his car at the time it occurred and drove up. There was no headlight burning on the street car. It had passed 40th street and was near the corner but he did not know the distance. The bodies of the boys lay just in front of the street car but over towards the west and close to them was the motorcycle.

Dorset, who survives, tells us that they were going home; that Bohannon got off the motorcycle and that he and Braswell got on by the 39th street curb with the motorcycle in second gear, which was not changed; that they pulled out to pass the parked car and were struck as they were pulling back into the fairway from the car track. They were going from fifteen to twenty miles an hour at that time. The parked car, which they passed stood about 100 feet from 40th street. The street car had no headlight burning and "after we got close on it, it appeared to be going the other way. By not having any light on the front we judged it to be going the other

way." It was giving no signal of approach. As they fell he said that the front end of the street car passed them about five feet and that the other two lay about a foot from its south end. The motorcycle itself ran to the sidewalk and its front wheel came to rest on it. Not a word was said from the time the motorcycle started till the accident occurred.

A. C. Shelton said that no headlight was burning; that the parked car was about thirty-five feet from the street car and that the rear end of the street car was right at the end of the intersection of 40th street. On direct examination he said that the "rear wheel of the motorcycle was lying just about one foot in front of the street car;" that Dorset was lying over on the sidewalk five or six feet from the motorcycle and that "the other two boys were lying right on the motorcycle, hadn't gotten off of it. The motorcycle was lying on top of Braswell's leg."

In his cross-examination this appears:

"Q. He was inside the curbing? Now, was the motorcycle on the north or south side of the front end of the street car? Was it north or south of the front end of the street car? That is, the end towards Richmond.

"A. It was on the north. I think they call Hull street north and south. It was the north end of it.

"Q. Was it between 39th street and the street car?

"A. No, sir, it was right beside the street car; wasn't below it. It was between 40th street and the street car.

"Q. Between the line and the front of the car?

"A. Yes, sir."

F. L. Thames was coming down 40th street to Hull, intending to board the car. He said it passed 40th street and he remarked to his wife, "You have missed the car." About that time he heard the crash; that he found the motorcycle lying on the ground, a man on the edge of the curb hollering, and two men lying down. There was no headlight, and the car as it came from the end of the line seemed to be going about thirty miles an hour.

S. M. Taylor also said there was no headlight; that it

had pretty nearly cleared 40th street when it stopped, but had not stopped when it struck the motorcycle.

H. C. Bohannon, who was called in rebuttal, said that there was sand on the car track ten or fifteen feet back of the front car wheels.

This is in substance the plaintiff's case.

For the defendant the motorman, W. L. Elliott, was called. He said that he was running moderately; that it was necessary to run moderately to pick up passengers at crossings on schedule time and that all car lights, including the headlight, were burning. He saw a light on the track which appeared to be at about 39th street and thought it an old automobile with only one headlight, and not until it was within about fifteen yards of him was there any reason to believe it would not turn out. He then left his seat and ran back into the car to escape splintered glass. His car was at a standstill when struck and lacked about two feet of completing the crossing at 40th street. At the speed he was going a service stop could be made within twenty feet and an emergency stop within ten or twelve. He actually made a service stop and used no sand to increase the traction force of his wheels. Two men lay by the motorcycle and one was over on the sidewalk.

J. H. Roberts brought in the disabled street car. He said that a broken air pipe had thrown the brakes into "emergency." He also said that the brakes would not lock unless there is air pressure to lock them and that he himself when he brought the car in changed the headlight from the north to the south end.

A. J. Patram chanced to be crossing 40th street at said intersection and was going from north to south. He was asked if he saw the headlight of the oncoming car. He replied that he did and that he saw it "distinctly." His impression was that the street car had just cleared 40th street at the moment of collision. He heard no signals of any sort and no grinding of brakes. Asked as to the location of the bodies he said: "There were two of them right

in front of the car, the other one was lying five or six feet away. He was thrown away from the other two entirely." He said that the motorcycle was between the car and the curbing, and again that it was thrown east from the car three or four feet.

W. E. Miller drove up 39th street to Hull in a car. As he entered the street he looked south and saw the street car approaching with a headlight. He looked north on Hull street and saw a motorcycle coming and soon after heard the crash. He came up immediately and noticed a dent in the street car over the right rail of the track going north. One of the boys was lying on the curb to the west and the other two were lying in the street, one between the car and the curb and one almost in front of the car. He saw sand on the track but would not undertake to say how far back it ran.

P. S. Madison, a bus driver for defendant company, saw the street car as it approached 40th street. Its headlight was then burning.

J. F. Smith was one of defendant's motormen and was on duty that night. His car followed Elliott's. There is a double track south to 35th street and it was necessary that Smith stop at 35th street that Elliott's car might clear the junction there on its return from the line's end at 43rd street. In other words, had he gone upon the single track while Elliott was returning there might have been a collision. With this necessity for observation he saw Elliott switch the headlight at the end of the line. He said that it continued to burn in its proper place in front of the car and was burning when that car stopped. He reached the point of accident soon after the collision. He noticed a dent on the left corner of the street car as it headed north; two bodies lay in front of it and one on the sidewalk.

W. E. McDowell, an accountant for the Chesapeake and Ohio Railway, with his wife and little daughter, stood at 39th street waiting to board a street car. He saw it coming and when it was somewhere between 40th and

41st streets, stepped out into Hull street that he might signal the motorman of his purpose. While there a motorcycle passed him, coming from the direction of 38th street and going south, which did not stop at 39th street where he stood. From the sound of the exhaust it seemed to be going thirty or forty miles an hour although he did not actually see it. It frightened his little daughter in passing and he stooped to comfort her. In a moment he heard the crash, and, thinking that he might be of some assistance, hurried to the point of collision. He found that the street car had just cleared 40th street and that there was a dent on its west side.

Mrs. McDowell, who was with her husband, saw the car coming and saw its headlight, and saw the headlight after she heard the crash. She further said that she heard the crash after the car had come to a standstill. She noticed no motorcycle, but the noise of passing traffic frightened her child.

Mr. W. H. Atkins was walking south on Hull street between 39th and 40th. He said that the street car had cleared 40th street about its length. He was then asked: "Was the whole car beyond 40th street or approximately?" and answered, "Just the length of the car." It was standing still when struck. The motorcycle passed him "running pretty fast."

R. L. Goode, a policeman, said there was a street light burning on the southeast corner of these intersecting streets.

H. L. Thompson, a motorcycle mechanic, said that it was not safe to carry three people on this vehicle. Its mechanical conditions were described to him. He said that with that load in second gear it could run from forty to forty-five miles an hour and could pick up speed quickly. At another point this witness said that this motorcycle with three men on it and with one spark plug missing fire, was not likely to move at all.

Mr. J. H. Petticord, an employee of the American Tobacco Company, also stood at 39th and Hull streets wait-

ing for a street car. He saw this car approaching from the end of the line on its way to Richmond. He said that its headlight was burning. He, his wife and granddaughter, stepped into the street that they might board it with convenience. "A motorcycle shot by me and I grabbed my little girl and pulled her to keep from getting hit." Questioned as to speed he said: "According to my opinion it was flying, it wasn't doing anything else." He heard it at about 38th street. It stopped there and started off from that point. There were three people on it and laughing as they passed him. As it passed them it swung into the street car track and went straight down. He heard the crash, left his wife and granddaughter, and was the second man to reach the point of collision. He said there was no car parked in that block. The witness was foreman in his department and knew LaPrade. He helped put the men in automobiles which were taking them to the hospital. The street car stood "just a little this way"—north of 40th street. Mrs. J. H. Petticord also saw the headlight burning on the street car as it came towards 40th street and said that it was still burning when the car stopped. Her testimony as to the passing motorcycle and its speed is in general agreement with that of Mr. Petticord. She saw the motorcycle strike the street car which was then standing still. When she heard the crash she screamed and ran into a store. She heard the motorcycle down in the 3800 block or a little below there stop and start and was attracted by the noise it made.

Mr. T. G. Vaughan, an employee of the defendant company, said that the breaking of an air pipe would throw the brakes into "emergency." He also said that he talked with Mr. Bohannon soon after the accident. Bohannon then said that the motorcycle had changed passengers between 37th and 38th streets. A note of that statement was then taken. Bohannon read it and said that it was correct.

J. D. Hillsman, supervisor of railways for the defendant company, said that taking into consideration the grade,

the street car going at thirty miles an hour could, in an emergency, make a good stop within ninety or 100 feet, and that if it were going at ten miles an hour it could be stopped within thirty or thirty-five feet.

In addition to the foregoing testimony, this stipulation is entered into:

"It is agreed that the front fork of the motorcycle on the left-hand side of the front wheel was bent inward towards the spokes of said wheel and that the forks were not bent back towards the rear of the motorcycle; that the front wheel was not broken down, but the tire on the front wheel was cut on the left side where the front fender had been squeezed down on it towards the right-hand side of the motorcycle."

We think that there is enough evidence in the record to support a verdict to the effect that the headlight was not burning; that no bell was rung and that the motorcycle started on its disastrous trip from some point by 39th street. About all of this the jury itself must have been somewhat in doubt for a verdict of $2,500 in a death case is unusual where the right to recover is plain.

██ Assuming that all this is true, we are asked to believe something counter to the common experience of men. We are asked to believe that the driver of the motorcycle, driving slowly, could not tell whether a lighted street car, less than a block away, was coming or going, merely because there was no headlight burning.

The street car itself was going slowly and had just crossed a lighted intersection. It must have been going slowly because the evidence is full-handed to show that it stopped just as it cleared 40th street and had either stopped or was coming to a stop at the moment of collision. The motorcycle and its passengers lay by its front end, which tells us that the car made no appreciable movement after the moment of accident, and all this is true whether the stop was a service stop or an emergency one. It is perfectly true that one cannot tell in which direction a car is moving if he sees it down the

track and far away, but any man who has ever stood in a safety zone at a crossing can tell whether a car a block away is coming or going.

There is this additional reason for believing that La-Prade could not have been misled. He stood at and started south from 39th street. Any street car going in that direction, and still about at 40th street, must have passed him, and he, as he prepared to start, must have been cognizant of traffic conditions.

■ We have frequently had occasion to consider Code, section 6363. The jury's verdict may be set aside when "it appears from the evidence that such judgment is plainly wrong or without evidence to support it." That is to say, it may be set aside for either of two reasons; it may be set aside when it is without evidence to support it and it may be set aside when it is plainly wrong even if it is supported by some evidence.

■■ In *Ricketts* v. *McCrory Co.,* 138 Va. 548, 121 S. E. 916, 920, Judge Burks said: "A verdict which has been disapproved by the trial judge is not entitled to the same weight on appeal as one that has been approved by him. *DuPont* v. *Taylor,* 124 Va. 766, 98 S. E. 866. The very fact that he is given the power to set aside a verdict as contrary to the evidence necessarily means that he must, to some extent at least, pass upon the weight of the evidence. 'It would, indeed, be a futile and idle thing for the law to give a court a supervisory authority over the proceedings and the manner of conducting a cause before the jury, and the right to set aside the verdict of the jury therein because contrary to the evidence unless the judge vested with such power could consider, to some extent at least, the evidence in the cause;' * * * *Cardwell* v. *Norfolk & Western Ry. Co.,* 114 Va. 500, 506, 77 S. E. 612, 614."

■ In *Norfolk So. Ry. Co.* v. *Hudgins,* 150 Va. 219, 142 S. E. 409, 411, Judge Campbell said: "In *Vandenbergh* v. *Buckingham Corp.,* 142 Va. 411, 128 S. E. 564, Judge Burks (Jr.) said: 'Perhaps on a demurrer to the evidence by the defendant, we might be compelled to accept Vanden-

bergh's statement of the waiver by Johnson, but not so under our present statute (Code, sections 6251 and 6363), when to do so would strain the credulity of the court to the breaking point, and require the entry of a judgment contradicted by every other fact and circumstance of the case, in conflict with the testimony of numerous witnesses of high character, and manifestly against right and justice. It is extreme cases of this sort that the statute was enacted to meet.' "

In *Maurer* v. *City of Norfolk,* 147 Va. 900, 133 S. E. 484, 487, this proposition is restated by Crump, P.: "A verdict which has been disapproved by the trial judge is not entitled to the same weight on appeal as one that has been approved by him."

In *Meade* v. *Saunders,* 151 Va. 636, 144 S. E. 711, 712, Judge McLemore said: "Where it can be seen from the evidence as a whole that the verdict has recorded a finding in plain deviation from right and justice, the court may, indeed should, set it aside."

To the same effect see also *Kendricks* v. *Norfolk,* 139 Va. 702, 124 S. E. 210; *Flannagan* v. *Mutual Ins. Co.,* 152 Va. 38, 146 S. E. 353; *Tabb* v. *Willis,* 155 Va. 836, 156 S. E. 556; and the late case of *Clark* v. *Parker,* 161 Va. 480, 171 S. E. 600, decided by this court in November, 1933.

Of course we do not mean to say that this or the trial court sits with the jury to pass upon the preponderance of evidence. *Ellison* v. *Hampton, etc., Railway Co.,* 154 Va. 39, 152 S. E. 373; *Wilkins* v. *Davis,* 158 Va. 763, 164 S. E. 649. It is only when the verdict is plainly wrong that it should be set aside.

This is not a question of preponderance of evidence. If it were we might believe those witnesses who had special reason to observe the oncoming car and who said that its headlight was burning. We might believe the McDowells and the Petticords who stood with children on Hull street at 39th that they might board it, and who sought to reassure these children when they were frightened by the motorcycle as it roared past them with its

exhaust open. We accept as settling all this the verdict of the jury.

It is said that even if LaPrade was negligent Braswell was not. Braswell saw the approaching car and made no protest. *Hancock* v. *N. & W. Ry. Co.*, 149 Va. 829, 141 S. E. 849.

█ If we were to concede that no duty rested upon Braswell to caution the driver of the motorcycle it still can have no effect upon the results. Neither the gong nor the headlight could have given him any additional information. We cannot punish the defendant because of their absence but can only give compensation when their absence proximately contributed to the accident.

█ A plaintiff cannot rest when he has shown that the defendant is negligent. He must in addition show that the negligence proximately contributed to the accident.

In *Virginian R. Co.* v. *Haley,* 156 Va. 350, 157 S. E. 776, 784, Mr. Justice Epes said: "The rule applicable to all actions for the recovery of damages for an act of negligence is that there can be no recovery unless the negligence of the defendant, or that for which the defendant in law must answer to some degree, or in some way, contributed, proximately, and not remotely, to causing the damage for which recovery is sought." See, also, *Norfolk & Western Ry. Co.* v. *Wellons' Adm'r,* 155 Va. 218, 154 S. E. 575.

█ Moreover, it is negligence for three men to ride upon a single-seated motorcycle, and it is particularly dangerous for it to turn with such a load unless the bodies of the riders sway in unison. *Gaines* v. *Campbell,* 159 Va. 504, 166 S. E. 704.

█ The motorman, who saw a vehicle approaching, had the right to assume that it would get off the street car track. He could not. When it appeared that it probably would not he brought his car to a stop and that is all that he could do.

█ LaPrade, laughing and heedless, ran headlong into a street car which had come to a stop or was in the

act of stopping, and he alone is responsible for the tragedy. Two deaths tell us of his speed.

LaPrade's negligence could not be imputed to Braswell, and this opinion rests upon no such presumption, but upon the fact that his negligence was the sole proximate cause of the accident. It is not enough to show that the company was negligent when that negligence but remotely and not proximately contributed to the result.

For reasons given we are of opinion that the action of the judge of the trial court who saw the witnesses and who heard them testify, should be sustained, and it is so ordered.

*Affirmed.*