# Richmond

ANDREW YANAGO V. AETNA LIFE INSURANCE COMPANY.

March 14, 1935.

Present, Campbell, C. J., and Holt, Epes, Gregory, Browning and
Chinn, JJ.

The opinion states the case.

*A. A. Bangel* and *Major M. Hillard,* for the plaintiff in error.

*Williams, Loyall & Taylor,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

J. J. McMannaway and Fred McMannaway, partners, were engaged in the business of hauling stone in Norfolk county, and in it used their own trucks and trucks hired from others. For their protection they had taken out an insurance policy with the defendant company which gave protection both to them and to their motor vehicle drivers against personal injury. Among the trucks hired was one owned by Peyton Campbell. On January 3, 1932, it was in use by the partnership and was being driven by K. A. McMannaway, a brother of the partners but not a member of the partnership, and on the truck was its owner also, Peyton Campbell. Andrew Yanago stood by the roadside and was struck—negligently, it is charged,—and injured. In due course he recovered a verdict against these defendants for $5,000. They are insolvent and execution against them was unavailing. Thereafter this action, under authority of Acts 1924, page 504, was brought against the defendant insurance company.

In the policy of insurance this provision is made for notice:

"VII. Claims and suits against insured. Upon the occurrence of an accident covered hereby and involving personal injury and/or death or damage to property of others, or both, the assured shall give immediate written notice thereof, with the fullest information obtainable at the time, to the company or its duly authorized agent. * * * If claim for damages is made or suit at law is brought the assured shall forward to the company every demand, summons, notice or other process as soon as the same shall have been received by or served on him, and the company will, at its own cost, adjust such claim or defend such suit in the name and on behalf of the assured or other person entitled to benefit hereunder."

For the plaintiff it is claimed that the required notice was given by J. J. McMannaway in a letter written by him and mailed in Norfolk county to Scott and Bond, agents at

Bedford city, through whom the policy was written. Notice of motion for judgment was filed on March 1, 1932, and was executed on K. A. McMannaway by delivery of a copy to J. J. McMannaway, a member of his family, at his usual place of abode, K. A. McMannaway, the defendant, being then absent. On the day of service J. J. McMannaway took a copy of this motion to R. A. Bond of Scott and Bond, who referred him to A. A. Steele, local adjuster of the defendant company at Roanoke. J. J. McMannaway and his brother, Fred, called at once upon Steele with the notice of motion and were referred to E. G. Farley, an adjuster in Norfolk, and on March 3rd, K. A. McMannaway and Peyton Campbell, called upon Farley at his office and reported the accident, thereupon this memorandum was dictated by Farley:

"We understand and agree that by the Aetna companies investigating this claim that there is no admission of liability on their part and that they are entitled to their full reservation of rights and hold themselves liable in no way on account of investigating the above styled accident which occurred near Deep Creek, on January 3, 1932, about 3:30 P. M., and which was first reported to the Aetna companies on March 1, 1932.

"J. J. McMANNAWAY<br>"K. A. McMANNAWAY."

It was signed by K. A. McMannaway. K. A. McMannaway, Campbell and Farley then took it to J. J. McMannaway who was at Deep Creek in Norfolk county who signed it also.

On March 3rd, K. A. McMannaway gave to Farley a written account of the accident. Its closing paragraph reads:

"I told my brothers about the accident and told them to report it to the company at the time, but due to an oversight on their part they failed to report same to the company until March 1, 1932, when they received suit papers from the claimant."

On March 16, 1932, Farley wrote this letter to J. J. McMannaway and sent it by registered mail:

"DEAR SIR:

"This is to advise you that after our careful consideration of this case, we have reached the conclusion that your failure to report this accident to us promptly, which our policy contract calls for has been the means of prejudicing our rights in this case and we are, therefore, forced to advise you that we shall have to decline to accept this case, for handling as we are denying under our policy contract to you.

"It will be our suggestion that you make prompt arrangements with an attorney to defend yourself in this action against you.

"I merely mention this fact in a helpful and constructive way only.

"I am returning herewith notice of motion you turned over to our Roanoke office.

"I regret our inability to handle this claim for you but I am sure you will agree that our rights have been prejudiced and consequently there is no other course open to us.
"Yours very truly."

This letter was received as is shown by a return receipt but was not answered. We have seen that Fred McMannaway and J. J. McMannaway called upon Steele, the local adjuster at Roanoke. This adjuster testified that Fred McMannaway told him that he had not reported the accident before because he did not think that they were liable or that there had been any negligence.

J. J. McMannaway's claim, in substance, is that he understood the letter written at the time of the accident to be something different from the report made to Scott and Bond on March 1st. Bond said that J. J. McMannaway's reputation for truthfulness is good and that "if he would state to me that he had sent a letter I would believe him, yes, sir, but he never stated that to me."

The motion for judgment of March 1st, was not executed

upon Campbell and was never docketed. Another motion was instituted on May 19, 1932. Proper service was had and it was on this second motion and on the 21st of June, 1932, that judgment went. There was no appearance by the defendants, nor was any notice given of this second action to the insurance company.

This action rests upon that judgment. There was a jury trial and a verdict for the plaintiff. That verdict the trial court on motion set aside as being contrary to the law and the evidence.

Was notice necessary and was it sent? If not necessary that of course ends this phase of our investigation. It is highly important that an opportunity should be given an insurer to investigate promptly any claim against it which arises out of an accident. More can usually be learned on the day of its occurrence than could be found out in an indefinite time after months had elapsed.

There are excellent reasons for this provision, but if the reasons were not good the situation would not change. Here is a perfectly plain and voluntary contract, and it is not the court's business to make muddy something clear. While *immediate* does not mean instantaneous, it does here call for notice with reasonable dispatch. J. J. McMannaway had himself no doubt of his duty for he wrote the required notice on the day of the accident and mailed it on the day following.

This instruction was approved in *Northwestern Nat. Insurance Co.* v. *Cohen,* 138 Va. 177, 121 S. E. 507, 509:

"The jury are instructed that one of the provisions of the policy sued on is that 'in the event of loss or damage the assured shall forthwith give notice thereof in writing to the company, or the authorized agent who issued the policy.' And although the jury may believe from the evidence that the plaintiff's automobile was stolen; yet if they further believe from the evidence that such theft occurred on the afternoon or evening of March 12, 1921, and the plaintiff did not notify the said company, or its agents, until the morning of March 14, 1921, and that she could

reasonably have given notice of the loss earlier, and that the delay in giving notice of such loss was material, the plaintiff cannot recover in this action, and the jury will find for the defendants."

Reasonable time and the necessity for prompt action in fair limits are jury questions. Since notice within a reasonable time was necessary we are to determine if it was given.

In *Braswell* v. *Virginia Elec. & P. Co.*, 162 Va. 27, 173 S. E. 365, 369, it is said: "We have frequently had occasion to consider Code, section 6363. The jury's verdict may be set aside when 'it appears from the evidence that such judgment is plainly wrong or without evidence to support it.' That is to say, it may be set aside for either of two reasons; it may be set aside when it is without evidence to support it, and it may be set aside when it is plainly wrong even if it is supported by some evidence." To the same effect see *Norfolk So. R. Co.* v. *Hudgins*, 150 Va. 219, 142 S. E. 409; *Meade* v. *Saunders,* 151 Va. 636, 144 S. E. 711.

In this case, however, we have the positive statement of a witness shown by the evidence to be of good repute, and who has no direct interest in the result of this litigation. His statement is neither incredible nor inherently improbable, nor can we say that it is plainly wrong. At the most it is but against the weight of evidence and therefore should have been submitted to the jury. *Parsons* v. *Parker*, 160 Va. 810, 170 S. E. 1; *Equitable Life Assurance Society* v. *Kitts*, 109 Va. 105, 63 S. E. 455.

Was this notice, duly mailed, received by the addressee? Those who would have received it in the ordinary course of business testified that it never came.

There are cases which hold that such evidence is sufficient to overcome that *prima facie* presumption which otherwise would prevail. This view is well expressed by Judge Paul in *Creasy* v. *United States* (D. C.), 4 F. Supp. 175, 178:

"The general efficiency of our postal system is such as

that the mailing of a letter furnishes a presumption of its receipt. But this is only a presumption of fact of an evidentiary nature, which may be disproven by other evidence. And, if it be clearly and indisputably proven that a notice required to be given or a paper required to be filed had never reached or come to the attention of the person for whom it was intended, it cannot be said that the person required to give the notice or file the paper had filled the obligation imposed on him by utilizing certain methods which ordinarily would have resulted in fulfilling this obligation, but which on the particular occasion unquestionably did not." See also *Whitmer Co.* v. *McClung,* 247 Ky. 625, 57 S. W. (2d) 648; *Rawleigh Medical Co.* v. *Burney,* 25 Ga. App. 20, 102 S. E. 358.

■ Strictly speaking, there is no necessary conflict between the testimony of a witness who says that he mailed a letter and that of an addressee who says that it was not received, for letters do miscarry, but their number, relatively speaking, is small indeed. And so the weight of authority is to the effect that their receipt is a jury question, and this is the law in Virginia. *Myers* v. *Bibee Grocery Co.,* 148 Va. 282, 138 S. E. 570, and *Frieden* v. *Cluett,* 142 Va. 738, 128 S. E. 61. In the latter case a guarantor testified that he had mailed a letter withdrawing a guaranty. The credit manager of the addressee testified that all such letters came to him in the regular course of business and that no such letter was received. The court said that it was a jury question and cited with approval this statement of the law by Gray, J., in *Huntley* v. *Whittier,* 105 Mass. 391, 7 Am. Rep. 536:

"The presumption so arising is not a conclusive presumption of law, but a mere inference of fact founded on the probability that the officers of the government will do their duty, and the usual course of business; and, when it is opposed by evidence that the letter was never received, must be weighed with all the other circumstances of the case, by the jury in determining the question whether the letter was actually received or not; * * *."

In *Rosenthal* v. *Walker,* 111 U. S. 185, 4 S. Ct. 382, 28 L. Ed. 395, the court, in discussing this presumption, quotes with approval the statement of the law made in *Huntley* v. *Whittier, supra.* To the same effect is *General Motors Acceptance Corp.* v. *American Ins. Co.* (C. C. A.) 50 Fed. (2d) 803, *certiori* denied 284 U. S. 676, 52 S. Ct. 130, 76 L. Ed. 571; *Matlock* v. *Citizens' Nat. Bank,* 43 Idaho 214, 250 P. 648, 50 A. L. R. 1418; *Bartholomae Oil Corp.* v. *Oregon Oil & D. Co.,* 106 Cal. App. 57, 288 P. 814; *Barstow* v. *Federal Life Ins. Co.,* 259 Mich. 125, 242 N. W. 862; *Corinth Bank & Trust Co.* v. *Cochran,* 219 Ala. 81, 121 So. 66; *Hart* v. *Little,* 39 Ga. App. 106, 146 S. E. 338; *Kubey* v. *Travelers' Protective Ass'n,* 109 Wash. 453, 187 Pac. 335; *Whitmore* v. *Insurance Co.,* 148 Pa. 405, 23 Atl. 1131, 33 Am. St. Rep. 838; *McFerren* v. *Goldsmith-Stern Co.,* 137 Md. 573, 113 Atl. 107, 18 A. L. R. 1125; 21 R. C. L. 768; note, 4 Ann. Cas., page 956, and cases cited; *Bonewell* v. *Jacobson,* 130 Iowa 170, 106 N. W. 614, 5 L. R. A. (N. S.) 436; *Southern Engine & Boiler Works* v. *Vaughan,* 98 Ark. 388, 135 S. W. 913, Ann. Cas. 1912D, 1062, and cases cited in note.

It is urged that since no method of notice was prescribed the insured elected at their peril to give notice by mail. But it must in the beginning have been understood that such a method might be adopted. Scott and Bond, general agents of the insurance company, had their office at Bedford city. They knew that the trucks were being used in Norfolk county nearly 200 miles away. We are told that it is usually the custom to serve notice on the office which issues the policy. They could scarcely have expected that the insured would come in person to tell them about the accident. Indeed the truck, under the policy, might have been used in Oregon and the accident might have occurred there.

Again it is said that the insurance company was not notified at all of the institution of the second motion for judgment brought by the plaintiff against McMannaway and Campbell, but it had already, by registered letter, disclaimed

any liability and so it would have been a vain thing to have notified it of the impending action about a matter with which it was not concerned.

When the action of March 1st was brought the insured complied with the letter of their contract, but were told that they were too late.

■ This instruction, tendered on behalf of the defendant, was refused: "The court instructs the jury that if you believe from the evidence that the letter claimed by McMannaway to be sent on January 3, 1932, was not received by the firm of Scott and Bond, you shall find for the defendant."

This instruction is good law and its rejection was error unless the point in issue has been elsewhere adequately covered. The jury was to determine, not if the letter had been mailed, but if it had ever come to Scott and Bond.

Plaintiff's instruction No. 5 was to the effect that the presumption of receipt was a rebuttable one. It reads: "The court instructs the jury that if they believe from the evidence that notice of the accident was sent to the defendant insurance company through the United States mails on the day following the happening of the accident, then the presumption is that such notice was delivered, which, however, may be rebutted."

The whole case turns upon the receipt of the letter and this instruction by indirection does tell the jury that the fact that it was mailed was not necessarily sufficient. But the defendant had a right to have the jury told that if, as a matter of fact, it was not received, the plaintiff had no case, and that proof of mailing was not enough. This the rejected instruction did. It told the jury just how the presumption of receipt might be met and exactly what was sufficient to rebut that presumption, and should have been given. There are no other reversible errors in the record.

For reasons stated, this case must be reversed and remanded, and it is so ordered.

*Reversed and remanded.*